UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:                                                    Case Number: 19-13756-13

    JACOB LAZARZ,

        Debtor.

---

    ROB'S AUTOMOTIVE, LLC,

        Plaintiff and
        Counter-Defendant,
      v.                                    Adversary Number:  20-49

    JACOB LAZARZ,

        Defendant and
        Counter-Claimant.

---

## **DECISION**

Jacob Lazarz ("Defendant") filed a voluntary chapter 7. The case was then converted to a chapter 13.[1] Defendant's plan was confirmed.[2]

Rob's Automotive, LLC ("Plaintiff") filed an adversary proceeding seeking a determination that debts owed to Plaintiff are not dischargeable under 11 U.S.C. § 523(a)(2), (4), or (6).[3] Defendant disputes the allegations.[4]

---

[1] Case No. 19-13756. ECF No. 33.

[2] Case No. 19-13756. ECF No. 89.

[3] Adversary Case No. 20-49. ECF No. 1. ECF numbers are from the Adversary Proceeding here forward unless otherwise indicated.

[4] ECF No. 5.

Plaintiff moves for summary judgment ("Motion").[5] Defendant opposes

the Motion. Both parties filed extensive exhibits and briefs.[6] The trial is

scheduled for January 20, 2021.

**FACTS**

This is a tale of a business relationship gone bad. Plaintiff is a Wisconsin

Limited Liability Company. It does auto repairs, body and paint work, detailing

of cars, and the buying and selling of used cars.[7] Defendant and Plaintiff

entered into a business relationship. It is disputed whether Defendant co-

owned or worked for Plaintiff. Plaintiff alleges Defendant was simply an

employee while Defendant has asserted an ownership interest. That said, for

the purposes of this adversary proceeding the Defendant states he will not

pursue a claim of ownership.

The business relationship ended. The termination was followed by

litigation in state court in 2017.[8] Since that time, the parties have engaged in

various tactics, some of which led to state court sanctions for the party, the

party's attorney, or both.

Plaintiff now seeks a judgment of nondischargeability for various claims.

It asserts those claims by alleging that the state law causes of action satisfy the

---

[5] ECF No. 11

[6] ECF Nos. 12, 18, and 21.

[7] ECF No. 1.

[8] ECF No. 11-4, Exh. B at 26.

elements under 11 U.S.C. § 523. No court decision or judgment has been entered on Plaintiff's state law claims.

The acts creating Plaintiff's claims and assertions can be broken into four groups:

> (1) payroll reimbursement;
>
> (2) sale of hoists;
>
> (3) conversion of a trade secret in the form of a database; and
>
> (4) over-reimbursement checks.

Plaintiff asserts the actions in the four groups are nondischargeable as a breach of contract or under 11 U.S.C. § 523(a)(2), (4), or (6). Additional facts are discussed below.

**JURISDICTION**

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* ("Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Western District of Wisconsin has referred all of its bankruptcy cases to the Bankruptcy Court for the Western District of Wisconsin.

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or sua sponte, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. § 157(b)(1), (c).

The parties agree this is a core proceeding. No party has objected to the court entering final orders. The Complaint is based on section 523(a)(2), (4), or (6) of the Bankruptcy Code. This section is a bankruptcy cause of action. While some claims may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Deitz v. Ford* (*In re Deitz*), 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). *See also Farooqi v. Carroll* (*In re Carroll*)*,* 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *Dragisic v. Boricich* (*In re Boricich*), 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011).

## LEGAL STANDARDS

### A. Summary Judgment Standard and Burden of Proof

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56). The moving party has the burden of establishing the nonexistence of a "genuine issue." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2727, p. 121 (4th ed.). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All justifiable inferences are to be drawn in favor of the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970). "However, the non-movant must set forth 'specific facts showing that there is a genuine issue for trial' which requires more than 'just speculation or conclusory statements.'" *Elbing v. Blair (In re Blair)*, 359 B.R. 233, 237 (Bankr. E.D. Wis. 2007) (quoting *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003)).

Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bank. P. 7056, adopting Fed. R. Civ. P. 56. At the summary judgment stage, the court's role is to determine whether there is a genuine issue for trial. The court need not weigh the evidence to determine the truth. *See Anderson*, 477 U.S. at 249.

The moving party "always bears the initial responsibility" to establish the lack of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must establish specific facts that show a genuine issue for trial. *See id.* at 587. The inferences drawn from the facts must be viewed in the light most favorable to the non-movant party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The Court cannot consider facts that are not in the record. *Summit Credit Union v. Goldbeck (In re Goldbeck)*, 590 B.R. 881, 887 (Bankr. W.D. Wis. 2018). But federal courts "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)). A court may also take judicial notice of its "own records of prior litigation closely related to the case before it." *St. Louis Baptist Temple*, 605 F.2d at 1172.

For summary judgment determinations, the materiality of facts must be determined based on the governing substantive law. In its adversary complaint, Plaintiff seeks an order that Defendant's debt is nondischargeable under 11

6

U.S.C. § 523(a)(2)(A), (4), and (6). The Court must determine whether any genuine issues of material fact exist to except this debt from discharge.

Under section 523, a plaintiff must first establish that the debtor owes him or her a debt. *See Zirkel v. Tomlinson* (*In re Tomlinson*), Adv. No. 96 A 1539, 1999 WL 294879, at *7 (Bankr. N.D. Ill. May 10, 1999). Second, a plaintiff must show that the debt falls within one of the specified grounds under a provision of section 523.

The party seeking to establish an exception to the dischargeability of a debt bears the burden of proof. *Goldberg Secs., Inc. v. Scarlata* (*In re Scarlata*), 979 F.2d 521, 524 (7th Cir. 1992); *Harris N.A. v. Gunsteen* (*In re Gunsteen*), 487 B.R. 887, 899 (Bankr. N.D. Ill. 2013). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991); *see also In re McFarland,* 84 F.3d 943, 946 (7th Cir. 1996). To further the policy of providing a debtor a fresh start, exceptions to the dischargeability of a debt are to be construed strictly against a creditor and liberally in favor of a debtor. *See In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

### B. Statutes Applicable to Plaintiff's Claims

Plaintiff, with no significant analysis, suggests that three alternative subsections of section 523 provide a basis for a determination of nondischargeability in this case. The subsections are (a)(2)(A), (a)(4), and (a)(6):

11 U.S.C. § 523(a)(2)(A) provides:

7

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual debtor from
> any debt— for money, property, services, or an extension,
> renewal, or refinancing of credit, to the extent obtained by— false
> pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's or an insider's financial
> condition.

To prevail on a section 523(a)(2)(A) claim, the party seeking a determination of nondischargeability must prove by a preponderance of the evidence:

> (1) the debtor made a false representation or omission,
>
> (2) that the debtor (a) knew was false or made with reckless disregard
> for the truth and (b) was made with the intent to deceive,
>
> (3) upon which the creditor justifiably relied.

*Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010). Actual fraud "encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky Int'l Elecs., Inc. v. Ritz,* 136 S. Ct. 1581, 1590 (2016). Reasonable reliance is required. *See Field v. Mans,* 516 U.S. 59 (1995).

11 U.S.C. § 523(a)(4) provides:

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or
> 1328(b) of this title does not discharge an individual debtor from
> any debt— for fraud or defalcation while acting in a fiduciary
> capacity, embezzlement, or larceny.

Plaintiff does not plead fraud. For that reason, the elements of fraud need not be addressed under this section.

To prevail on a section 523(a)(4) claim of defalcation while acting in a fiduciary capacity, the party seeking a determination of nondischargeability must prove by a preponderance of the evidence:

> (1) the existence of a trust;
>
> (2) the debtor is a fiduciary of that trust; and
>
> (3) fraud or defalcation by the debtor while acting as a fiduciary of the trust.

*Hellenbrand Glass, LLC v. Pulvermacher (In re Pulvermacher)*, 567 B.R. 881 (Bankr. W.D. Wis. 2017) (citing *Baytherm Insulation, Inc. v. Carlson (In re Carlson)*, 456 B.R. 391, 395 (Bankr. E.D. Wis. 2011)). Fraud must be pled with particularity. Defalcation requires a culpable state of mind. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).

"Both embezzlement and larceny require the debtor to have appropriated funds for his or her own benefit with fraudulent intent or deceit, the difference being only that embezzled property comes into the debtor's hands lawfully, while larceny requires that the debtor obtain the property unlawfully." *Hebl v. Windeshausen*, 590 B.R. 871, 877-78 (W.D. Wis. 2018) (citing *In re Weber*, 892 F.2d 534, 538-39 (7th Cir. 1989)).

Finally, 11 U.S.C. § 523(a)(6) provides:

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— for willful and malicious injury by the debtor to another entity or to the property of another entity.

To prevail on a 523(a)(6) claim, the party seeking a determination of non-dischargeability must establish:

(1) the debtor caused an injury;

(2) the debtor's actions were willful; and

(3) the debtor's actions were malicious.

*United Providers, Inc. v. Pagan (In re Pagan)*, 564 B.R. 324 (Bankr. N.D. Ill. 2017).

### DISCUSSION

Defendant concedes he will be unable to prove his assertion of ownership and agrees to the dismissal of all counterclaims. Thus, to the extent that the motion requests the dismissal of the counterclaims, such relief is granted.

The remaining issues are whether Plaintiff has established there is no genuine issue of material fact as to the claims of nondischargeability under 11 U.S.C. § 523(a)(2), (4), or (6) and, if there are no genuine issues of material fact, whether Plaintiff has met its burden of proof on each claim. Plaintiff does not distinguish between the various theories of nondischargeability or analyze the application of elements to the facts. It thus falls upon the Court to discern whether the facts satisfy any of the statutory provisions.

**A.      Payroll Reimbursement**

Defendant was granted authority to write checks from Plaintiff's account. He had a right to make payments for payroll and related expenses from accounts of the Plaintiff. The parties agreed Plaintiff would be reimbursed for payroll payments and expenses to Nate Elgi and Michael Keaton.[9]

---

[9] ECF No. 11-11. Request No. 4.

Defendant made payroll and related payments from Plaintiff's account in the amount of $26,062.12.[10]  He only reimbursed the company for $12,158.21 of this amount.[11] As a result, the amount at issue for the payroll reimbursement expense is undisputed and is in the amount of $13,903.91.

Plaintiff asserts this unpaid payroll reimbursement expense is a breach of contract. It does not argue that a breach of contract satisfies any provision of section 523 that would make it nondischargeable.

There is no dispute about the amount at issue. Summary judgment is thus granted to the Defendant dismissing any contract claim as nondischargeable.

Plaintiff has a general unsecured claim of $13,903.91 for the breach of contract.

The Court grants summary judgment dismissing the contract claim but allowing such claim as a general unsecured claim in this case in the amount of $13,903.91, as such claim is subject to discharge.

## B.      Over-Reimbursement Checks

Although the nature of the business relationship is disputed, while Defendant worked with or for Plaintiff, he "had the ability to draft checks from the Company's checking account(s)."[12] For this adversary, Defendant has

---

[10] ECF No. 11-1 at ¶ 34.

[11] ECF No. 11-11. Request No. 6.

[12] ECF No. 11-11. Request No. 8.

agreed to not pursue claims of ownership. So the Defendant's actions are to be viewed as those of an employee.

During the time Defendant worked with or for Plaintiff, he "had the ability to draft checks from the Company's checking account(s) for expenses incurred for the Company's benefit"[13] and he "made purchases of equipment, inventory, and/or services for the Company using [his] personal funds."[14] The parties agree that he had a right to be reimbursed for any payments he made for the Plaintiff's benefit.

Defendant admits that he "drafted one or more checks from the Company's checking account(s) to [himself] that were unrelated to expenses [he] incurred for the Company's benefit"[15] and he "drafted one or more checks from the Company's checking account(s) . . . that were labeled as reimbursements for certain expenses, but were for amounts greater than [he] incurred for those expenses."[16]

There are ten checks at issue.[17] Those checks total $16,531. There is no dispute of fact about the amounts of over-reimbursement for two of the checks.

---

[13] ECF No. 11-11. Request No. 9.

[14] ECF No. 11-11. Request No. 10.

[15] ECF No. 11-11. Request No. 14.

[16] ECF No. 11-11. Request No. 15.

[17] The check numbers are as follows: 6738, 6862, 7138, 7317, 7384, 7407, 7428, 7578, 7593, 7605. ECF No. 11-1 ¶ 13.

The first is $800 for payments to Mr. Hanson.[18] The second is check number 7138 representing an over reimbursement of $1,300 for the 2000 Subaru.[19]

The remaining alleged over-reimbursements are subject to material disputes of fact. Plaintiff asserts Defendant has not proven the legitimacy of any of the reimbursements. In doing so, Plaintiff overlooks the burden of proof.

As noted, the elements of a section 523(a)(2) claim are:

> (1) the debtor made a false representation or omission,
>
> (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive,
>
> (3) upon which the creditor justifiably relied.

A false representation for purposes of section 523(a)(2)(A) is an express misrepresentation that can be shown either by a spoken or written statement or through conduct. *New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez),* 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002). The representation must be a representation of fact. *Vozella v. Basel-Johnson (In re Basel-Johnson),* 366 B.R. 831, 845 (Bankr. N.D. Ill. 2007). To qualify as a false representation, it must also be a statement related to present or past fact. In order for a statement to qualify as a false representation under section 523(a)(2)(A), "the statement must relate to a present or past fact." *Hodgin v. Conlin (In re Conlin),* 294 B.R. 88, 100 (Bankr. D. Minn. 2003) (citing *Gadtke v. Bren (In re Bren),* 284

---

[18] ECF No. 12-1 ¶30(d)(i).

[19] ECF No. 12-1 ¶30(d)(ii)(4).

B.R. 681, 690 (Bankr. D. Minn. 2002)). In *Bank of Louisiana v. Bercier (In re Bercier),* 934 F.2d 689, 690 (5th Cir. 1991) the Court held:

> In order for Bercier's representation to be a false representation or false pretense under § 523(a)(2), the "false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts.* [A debtor's] promise . . . related to [a] *future action* [which does] not purport to depict current or past fact . . . therefore cannot be defined as a *false representation or a false pretense.*"

Defendant admits there was an over-reimbursement for one check of $800 and a second check for $1,300. So the representation of amounts due to him were untrue and there was a false representation.

But to be nondischargeable, the Plaintiff must also establish the Defendant made the representation knowing it was false or in reckless disregard for its truth and with intent to deceive. Additionally, that Plaintiff justifiably relied on the false representation. *Reeves v. Davis (In re Davis),* 638 F.3d 549, 553 (7th Cir. 2011); *Wallner v. Liebl (In re Liebl),* 434 B.R. 529, 538 (Bankr. N.D. Ill. 2010); *Baker Dev. Corp. v. Mulder (In re Mulder),* 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004). To prevail on a section 523(a)(2)(A) complaint, all three elements must be established. *Glucona Am., Inc. v. Ardisson (In re Ardisson),* 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one element is outcome determinative. *Bletnitsky v. Jairath (In re Jairath),* 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Plaintiff has failed to prove any of these elements.

For the purpose of summary judgment, no evidence has been presented on the second element. Plaintiff has made no showing that *when the checks*

*were written* Defendant knew the representation was false or made with reckless disregard for the truth, nor has Plaintiff shown it was made with intent to deceive.

More to the point, Plaintiff has shown no reliance, or even really alleged any facts demonstrating reliance. "While justifiable reliance does not obligate a creditor to investigate everything a debtor says, the creditor may not 'blindly' rely upon a misrepresentation which could have been proven false through a 'cursory examination or investigation.'" *Rice v. Sasse (In re Sasse)*, 438 B.R. 631, 650 (Bankr. W.D. Wis. 2010) (citing *Field v. Mans,* 516 U.S. 59, 71 (1995)). While it is conceded Defendant had access and authority to use Plaintiff's credit cards and to write checks from Plaintiff's account, Plaintiff had the same level of access and ability. Thus, upon the facts asserted, Plaintiff has not and cannot demonstrate the third element of this claim—reliance.

Nor has Plaintiff established that there was in fact a false representation or admission as to the other checks which Defendant has not conceded as over-reimbursements. Plaintiff similarly has not established the other two elements of the claim for these checks. For these reasons, Plaintiff cannot be awarded summary judgment for this claim. Summary judgment is granted to Defendant dismissing the claim the amounts represented by the ten checks are nondischargeable under 11 U.S.C. § 523(a)(2).

## C.    Sale of Hoists

Plaintiff and Defendant have competing stories related to the purchase and sale of the hoists. Plaintiff claims "Defendant used the Plaintiff's credit

card to purchase two automotive hoists—the first for $1,500.00 and the second for $1,550.00—from National Auto Tools, Inc. Defendant left one of these hoists at Plaintiff's auto shop, but sold the other and kept the proceeds."[20] Defendant contends there were three hoists purchased: one for $1,495 (which Plaintiff has), one for $2,840, and one for $2,095. Defendant says $3,050 was paid by using his own MATCO Tools debit card and $3,050 (a payment of $1,500 and one of $1,550) was made using Plaintiff's credit card.

Plaintiff argues Defendant kept $1,500 in proceeds from the sale of an automotive hoist which was purchased using Plaintiff's credit card. Defendant responds Plaintiff has no basis for the allegation and that there has been no showing the reimbursement did not occur. Further, that if it did not occur, that the lack of reimbursement was intentional. There are material disputes of fact about the claims related to the hoist. Thus, summary judgment on the claims of nondischargeability under 11 U.S.C. § 523(a)(4) or (6) must be denied.

### D.    Database

Plaintiff maintains a list of customers and the work performed for them using Mitchell I software. That client data was downloaded to a backup hard drive of Plaintiff's Mitchell 1 database. The hard drive is in the possession of Defendant.

Plaintiff says it paid $14,198.99 in fees to Mitchell 1 to build and maintain the database.[21] Plaintiff suggests this amount as an actual damage

---

[20] ECF No. 11-1 at 17.

[21] ECF No. 11-1 at 9, ¶31.

amount. Plaintiff also requests summary judgment for punitive damages of $28,398.98 pursuant to Wis. Stat. § 134.90(4)(b) and (c), an award of attorneys' fees, and a determination that the debt is nondischargeable under 11 U.S.C. § 523(a)(4) as larceny.

No evidence has been presented to suggest Plaintiff has no copy of the database or the Mitchell I program. No facts have been presented to prove either that Plaintiff has suffered any actual damages or that Defendant has used the data. Nothing would suggest that Plaintiff ever demanded return of the database, nor is the timing surrounding creation and taking of the hard drive in the record. While in possession of the hard drive, Defendant says he cannot even access the copy without the Mitchell I computer program. He says he does not have that program.

Defendant "does not object to the entry of an injunction which bars him from accessing the database . . . and orders him to turn over any copies of the database that are in his possession."[22] Plaintiff is entitled to the return of the database and Defendant has conceded as much. To the extent that is the appropriate remedy, summary judgment is granted enjoining Defendant from using the hard drive and ordering the Defendant to turn over possession of the hard drive to Plaintiff.

---

[22] ECF No. 12-1 at 21.

Summary judgment is denied on the claim for any actual damage amounts as none have been demonstrated. Summary judgment is also denied with respect to the claims for punitive damages and attorneys' fees.

### E.   Nondischargeability Under 11 U.S.C. § 523(a)(4)

#### 1.   Defalcation while acting in a fiduciary capacity

Plaintiff says that the Court should also determine that claims are nondischargeable under section 523(a)(4). Plaintiff does not plead fraud. Rather, Plaintiff asserts Defendant either committed defalcation while acting in a fiduciary capacity, embezzlement, or, if court does not find it is embezzlement, larceny.

Plaintiff says summary judgment is not being sought on the fiduciary capacity claim itself but: "Plaintiff seeks a summary judgment determination that if [a fiduciary duty] is found, and found to have been breached, the damages for that claim should be nondischargeable under § 523(a)(4), as defalcation . . . ."[23] The Court does not issue opinions speculating about what might occur at trial. It does, however, on summary judgment examine the pleadings and apply the law.

A threshold inquiry is whether an express trust or a fiduciary relationship runs from the Defendant to the Plaintiff under the facts here. The existence of an express trust or fiduciary relationship is tested under federal law standards. *O'Shea v. Frain (In re Frain),* 230 F.3d 1014, 1017 (7th Cir.

---

[23] ECF No. 11-1 at 15, ¶ II.

2000). An express trust requires an explicit declaration of trust, a clearly

defined trust res, and an intent to create a trust. *CFC Wireforms, Inc. v. Monroe*

*(In re Monroe),* 304 B.R. 349, 358 (Bankr. N.D. Ill. 2004). The intent to create a

trust relationship is a key element in determining the existence of an express

trust. *Id.*

A section 523(a)(4) cause of action can stem from a fiduciary relationship

other than one arising from an express trust. *See Frain*, 230 F.3d at 1017; *In re*

*Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir. 1994). "A fiduciary relationship

may arise separate from an express trust, . . . but it is the substance and

character of the debt relationship that determines whether such a fiduciary

relationship exists." *Monroe*, 304 B.R. at 358. The Seventh Circuit has found

that a fiduciary relationship exists for purposes of section 523(a)(4) when there

is "a difference in knowledge or power between fiduciary and principal which

. . . gives the former a position of ascendancy over the latter." *Marchiando*, 13

F.3d at 1116; *see also In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996)

("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is

substantial inequality in power or knowledge . . . ."). For example, a lawyer–

client relationship, a director–shareholder relationship, and a managing

partner–limited partner relationship all require the principal to "'repose a

special confidence in the fiduciary.'" *Frain*, 230 F.3d at 1017 (quoting

*Marchiando*, 13 F.3d at 1116). Yet not all fiduciary relationships fall within the

purview of section 523(a)(4). *Woldman*, 92 F.3d at 547. A fiduciary relationship

qualifies under section 523(a)(4) only if it "imposes real duties in advance of the

19

breach . . . ." *Marchiando*, 13 F.3d at 1116. In other words, the fiduciary's obligation must exist before the alleged wrongdoing. *Id.*

Plaintiff acknowledges that whether a fiduciary duty is owed is a fact sensitive inquiry. Plaintiff concedes the duty is limited to "key employees" and cites *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 42, 294 Wis. 2d 274, 304, 717 N.W.2d 781, 796. But Plaintiff does not say that Defendant was a key employee. Plaintiff identifies no express trust. Defendant was not a corporate officer.

Instead, Plaintiff just repeatedly asserts in conclusory fashion that there was a fiduciary duty. "In the absence of a contract imposing specific duties of loyalty, if the employee whose acts are alleged to have breached a common-law duty of loyalty to his or her employer is not an officer, the inquiry then shifts to 'whether [the] employee is vested with policy-making authority or has the ability to make decisions which bind the company.'" *Aon Risk Servs., Inc. v. Liebenstein*, 2006 WI App 4, 289 Wis. 2d 127, 162 (Wis. Ct. App. 2005) (quoting *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435 (Wis. Ct. App. 1996)).

There is no evidence of any difference in power or ascendency between Plaintiff (or its owner) and the Defendant. Neither is there any evidence of the imposition of particular duties imposed on Defendant that would rise to the level of a fiduciary capacity.

Finally, defalcation requires a culpable state of mind. Plaintiff has not established such a state of mind. Plaintiff granted Defendant access to and use

of its checking account. Plaintiff agreed Defendant could reimburse himself for expenses. Doing so did not vest him with policy-making authority, nor did it constitute making decisions binding the company. While it may have violated a duty of loyalty, that does not rise to defalcation in a fiduciary capacity. The lack of any evidence establishing a fiduciary capacity results in the failure of Plaintiff to establish a necessary element of this claim. There may have been a breach of contractual agreements about reimbursements, the overpayment, or the failure of Defendant to reimburse Plaintiff, but those agreements do not rise to the level of a fiduciary relationship. Therefore, the Court finds Plaintiff has failed to establish the required elements, and the claim under section 523(a)(4) that Defendant committed defalcation while acting in a fiduciary capacity fails. Summary judgment is granted to Defendant dismissing this claim as it relates to defalcation in a fiduciary capacity for the alleged over-reimbursed checks.

### 2. Embezzlement

The elements to prove embezzlement are: "(1) the debtor appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." *Kriescher v. Gibson (In re Gibson)*, 521 B.R. 645, 655 (Bankr. W.D. Wis. 2014). Defendant conceded the $800 check and the $1,300 check were over-reimbursements. As a result, the first element has been met.

For the second element, Plaintiff simply argues that the "only reasonable conclusion" for the checks being written for greater amounts than the legitimate expenses is that Defendant did so "with fraudulent intent." Asking

the Court to infer intent does not satisfy Plaintiff's burden of proof. The requisite intent must be established.

Proof of intent is measured by the debtor's subjective intention. *In re Monroe,* 304 B.R. at 356; *Mega Marts, Inc. v. Trevisan (In re Trevisan),* 300 B.R. 708, 717 (Bankr. E.D. Wis. 2003). "Embezzlement requires a showing of wrongful intent." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013) (citing *Neal v. Clark*, 95 U.S. 704, 708 (1878)) (noting that embezzlement "involv[es] moral turpitude or intentional wrong"). *See Moore v. United States,* 160 U.S. 268, 269-70 (1895) (describing embezzlement and larceny as requiring "felonious intent"). The Plaintiff must show by a preponderance of the evidence that the misappropriation was done with fraudulent intent. *Cunningham,* 482 B.R. at 448; *Bombardier Capital, Inc. v. Dobek (In re Dobek),* 278 B.R. 496, 509 (Bankr. N.D. Ill. 2002) (citing *Carlson v. Rigsby (In re Rigsby),* 152 B.R. 776, 778 (Bankr. M.D. Fla. 1993)).

For the purpose of summary judgment, Plaintiff has not carried his burden of proof in establishing the second element of a claim for embezzlement under 523(a)(4) for the admitted over-reimbursed checks. Material issues of fact remain on all elements of the claim for the other eight checks.

Plaintiff's assertion that Defendant has not shown those expenses to be legitimate does not constitute Plaintiff meeting its burden of proof. Summary judgment is therefore denied on the 523(a)(4) claim for embezzlement.

22

### 3. Larceny

Plaintiff pleads that if the Court does not find the funds to be lawfully entrusted to Defendant, that the amount of the checks should be found nondischargeable as larceny. Larceny requires similar elements to embezzlement, except that the funds were not lawfully entrusted with Defendant. Plaintiff also claims that Defendant was granted the authority— with Plaintiff's knowledge and consent—to use Plaintiff's credit card and accounts for expenses. Thus, it is unclear how Plaintiff believes a claim of larceny can be established. Defendant cannot commit larceny if he had the legal authority to write checks from the account. *Hebl v. Windeshausen*, 590 B.R. at 876. Further, Plaintiff's position contradicts the evidence it presented confirming that Defendant has the legal authority and Plaintiff's consent to write checks and to use the credit card.

Based on the facts submitted by Plaintiff and Defendant, Plaintiff cannot establish the first required element for larceny. Summary judgment is granted in favor of the Defendant dismissing the claim of larceny as it relates to the checks.

### F.    Nondischargeability Under 11 U.S.C. § 523 (a)(6)

Plaintiff asserts the over-reimbursed checks are nondischargeable under (a)(6) because it believes the Court should conclude that drafting of the checks was done willfully and with malice. Section 523(a)(6) provides a debt is nondischargeable if it was incurred through willful and malicious injury by the debtor. To show willful and malicious injury, Plaintiff must show: (1) Defendant

23

acted willfully, (2) Defendant acted maliciously, and (3) Defendant's willful and malicious actions caused injury to the Plaintiff's property. *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017). To meet the standard for willfulness, the Plaintiff must show "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).

Maliciousness in this context is less well-defined, but has generally been held to encompass "implied or constructive malice as well as actual malice." *In re McGuffey*, 145 B.R. 582, 586 (Bankr. N.D. Ill. 1992). Implied malice may be shown "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir. 1996) (internal quotations omitted); *see also Lee v. Ikner (In re Ikner),* 883 F.2d 986, 991 (11th Cir. 1989) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.").

Plaintiff points to nothing in the record establishing that the actions of Defendant in writing the checks was malicious. On summary judgment, Plaintiff does nothing beyond reciting the facts about the checks, their amounts, and that (other than the two checks discussed *infra*) Plaintiff does not believe there is a basis to conclude the amounts were not over-reimbursements of this claim. To succeed under section 523(a)(6) in this district, the Plaintiff must show that the debtor intended to and caused an injury to the plaintiff or the plaintiff's property interests. *Iwaszczenko v. Neale*

24

*(In re Neale)*, 440 B.R. 510, 520 (Bankr. W.D. Wis. 2010) (emphasis added).

That element has not been proven by the greater weight of the evidence. While

the circumstances might suggest each of the elements of section 523(a)(6),

alternative explanations are also probable for one or more of the checks. It is

the Plaintiff's burden to establish that the Defendant knew the checks were

over-reimbursements when written. The parties agree that two checks were

over-reimbursements in the total amount of $2,100, but it did not establish

that the Defendant knew there was an over-reimbursement when one or the

other checks were drawn. Nor was it proved that Defendant knew drawing on

the account would injure the Plaintiff or that Defendant intended to cause

injury. The burden of proof is "by a preponderance of the evidence." When one

inference is as likely as its opposite, that standard is not met. The absence of

facts requires denial of  summary judgment as it relates to the checks alleged

to be over-reimbursements under 523(a)(6).

### G.    Other Monetary Requests

Along with the punitive damages and attorneys' fees requested for the

Database claim, Plaintiff requests:

- exemplary damages pursuant to Wis. Stat. § 895.446(3);

- An award of $200,000 in punitive damages pursuant to Wis. Stat.
  § 895.043(3) as a penalty for Defendant's conversion of Plaintiff's
  property; and

- Attorneys' fees and costs.

Although treble damages might be appropriate for certain amounts found

to be nondischargeable, Plaintiff has not shown any alleged amounts are

nondischargeable. Thus, Plaintiff's request for summary judgment for punitive and treble damages is denied.

The American Rule applies to attorneys' fees in dischargeability proceedings in bankruptcy court. *Dancor Constr., Inc. v. Haskell (In re Haskell)*, 475 B.R. 911, 923 (Bankr. C.D. Ill. 2012). Courts have found, however, that when "attorney fees are awarded in cases in which the underlying debt is later determined to be nondischargeable by a bankruptcy court, the attorney fees *may* also be nondischargeable." *In re Pulvermacher*, 567 B.R. at 890 (emphasis added). "If a non-dischargeable debt includes under law an award of attorneys' fees, the amounts due for such fees would also be non-dischargeable." *Joyce v. Wish (In re Wish)*, 472 B.R. 763, 779 (Bankr. N.D. Ill. 2012) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998)). The amounts, however, must be reasonable. A decision must first be made whether any amounts are nondischargeable. If so, any fees must be tied to those claims and must be reasonable. Similarly, "[w]hen a creditor demonstrates that treble damages arise from the same conduct warranting an award of attorney's fees, such treble damages are also nondischargeable." *In re Pulvermacher*, 567 B.R. at 892. Further, any such awards require the exercise of discretion by the Court.

For these reasons, summary judgment on the demands for exemplary and punitive damages and attorneys' fees is denied.

**CONCLUSION**

This decision shall constitute findings of fact and conclusions of law

pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil

Procedure.

A separate order consistent with this decision will be entered.

Dated: January 13, 2021

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge